UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

PROGRESSIVE CASUALTY          )
INSURANCE COMPANY,            )
                             )
    Plaintiff,        )
                             )
    vs.               )      Case No. 1:14CV00078 ACL
                             )
MARSHIA MORTON and           )
DELTON MORTON,               )
                             )
    Defendants.       )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Marshia Morton and Delton Morton's ("Mortons") Partial Motion for Summary Judgment and Plaintiff Progressive Casualty Insurance Company's ("Progressive") cross Motion for Summary Judgment in this insurance coverage dispute. Also pending are the following motions filed by the Mortons: Motion for Oral Argument and Testimony Regarding Plaintiff's Motion for Summary Judgment (Doc. 39); and Request for Leave to File First Request for Production Directed to Plaintiff (Doc. 43). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). For the following reasons, the Court will grant Progressive's Motion for Summary Judgment and deny the Mortons' Motion for Summary Judgment.

## Background

On December 29, 2013, Marshia Morton was operating a 1994 Ford Probe in Scott County, Missouri, when the Probe was struck by a vehicle operated by Edith Grainger. The vehicle operated by Grainger was insured by a Progressive auto policy which had policy limits of $100,000 per person, $300,000 per accident. Marshia Morton asserted a claim against Grainger

1

due to the injuries she sustained in the accident. Her claim ultimately settled for the total single person policy limit of $100,000 under the Progressive policy issued to Grainger.

Because the uncompensated damages as a result of the injuries sustained in the accident exceeded $100,000, Morton sought additional coverage under an "underinsured motorist" ("UIM") provision of Progressive's Personal Auto Policy ("Policy") issued to her husband, Delton Morton. The Policy provided coverage for the 1994 Ford Probe and Marshia Morton was listed on the Policy as a driver and household resident. The Policy provided UIM coverage in the amount of $100,000 per person and $300,000 per accident. The Mortons made demand on Progressive for payment under the UIM provisions. Progressive refused to make payment, and Progressive brought this action for declaratory judgment.

In Count I of its Petition for Declaratory Judgment, Progressive alleges that there is no UIM coverage available to the Mortons under the Policy because Grainger's vehicle did not qualify as an "underinsured motor vehicle" under the definition of the Policy. In Count II, Progressive contends that stacking of UIM coverage under the Policy is prohibited by the Policy. In Counts III and IV, Progressive makes the same arguments regarding the definition of an underinsured motor vehicle and stacking with respect to a separate commercial auto insurance policy issued to Delton Morton ("Commercial Policy").

The Mortons filed a counterclaim against Progressive, in which they assert vexatious refusal to pay UIM coverage (Count I); and vexatious refusal to pay with regard to the stacking of the Mortons' UIM policies on three separate vehicles (Count II).

The Mortons filed a Partial Motion for Summary Judgment, contending that they are entitled to judgment as a matter of law with respect to Counts I and II of Progressive's Petition for Declaratory Judgment because the Policy, taken as a whole, is vague, misleading, illusory,

contradictory and ambiguous in that the definition of "underinsured motor vehicle" takes away coverage promised in the Declarations Page, the Insuring Agreement, the Limits of Liability section, and the "Other Insurance" clause, requiring the Policy to be construed in favor of the insured.

Progressive filed a cross Motion for Summary Judgment, contending that Progressive is entitled to judgment as a matter of law with respect to all claims for declaratory judgment because the UIM coverages of the Policy and the Commercial Policy are not triggered and the language of the policies is not ambiguous. Progressive further argues that the policies at issue expressly prohibit stacking of UIM coverage.

## Summary Judgment Standard

Because this is a diversity case, the Court applies state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); s*ee also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). "When a federal court sits in diversity, it must apply the governing precedent from the state's highest court, and when there is no case directly on point, the federal court must predict how the state supreme court would rule if faced with the same question." *Jordan v. Safeco Ins. Co. of Ill*, 741 F.3d 882, 887 (8th Cir. 2014).

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

"Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp.3d 943, 947 (E.D. Mo. 2014) (citing *Husinga v. Federal–Mogul Ignition Co.,* 519 F. Supp.2d 929, 942 (S.D. Iowa 2007)). Because "the interpretation and construction of insurance policies is a matter of law, . . . such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

### Discussion

"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). Missouri law governs this insurance contract. Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law. *Capitol Indem. Corp. v. 1405 Associates, Inc.,* 340 F.3d 547, 547 (8th Cir. 2003). There is no statute in Missouri that requires drivers to purchase UIM coverage. *See Noll v. Shelter Ins. Companies*, 774 S.W.2d 147, 151 (Mo. 1989). Accordingly, the limits of UIM coverage are determined by the insurance contract. *Id.*

The general rules for interpretation of contracts apply to insurance policies. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301–02 (Mo. 1993) (en banc). When "construing the terms of an insurance policy, this Court applies the meaning which would be attached by an

ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009). Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole. *Id.* Courts must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

If the policy language is unambiguous, it must be enforced as written. *Id.* But if the language is ambiguous, courts should construe the policy in favor of the insured. *Id.* The fact that the parties disagree over the policy's interpretation does not render a term ambiguous. *O'Rourke v. Esurance Ins. Co.*, 325 S.W.3d 395, 398 (Mo. Ct. App. 2010). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d, 129, 132 (Mo. banc 2007). If an insurance clause "appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous." *Id.* at 134. However, a court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007).

I.    **The Personal Auto Policy**[1]

The "Declarations Page" of the Progressive Policy states:

---

[1] The Court's summary of the Policy is taken from the copy of the Policy attached to Progressive's Statement of Uncontroverted Material Facts (Doc. 28) as Exhibit 1 (Doc. 28-1). The Mortons admit that Exhibit 1 is a true and accurate copy of the Policy. (Doc. 34 at 1.)

**Auto Insurance Coverage Summary**[2]
This is your Renewal
Declarations Page

\*\*\*

Your insurance policy and any policy endorsements contain a full explanation of your coverage.  The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle. . . .

The Declarations Page contains a section titled "**Outline of coverage**" that lists each of the Mortons' vehicles.  Immediately after the "**Outline of Coverage**" heading, the Declarations Page states "**All Limits listed below are subject to all terms, conditions, exclusions and applicable reductions described in the policy.**"  With respect to the 1994 Ford Probe, there is a line indicating that the coverage includes "Underinsured Motorist" with "Limits" of "$100,000 each person/$300,000 each accident."

The Policy provides the following definition of "Declarations Page":

**"Declarations page"** means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information.  The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

The first heading in the body of the Policy is titled "<u>**INSURING AGREEMENT**</u>" and provides as follows:

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions, and limitations of this policy.  **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**.  **Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

The UIM provisions in the Policy are contained in Part III(B) and provide in relevant part as follows:

---

[2]Unless noted otherwise, the bold face type is contained in the Policy.

6

## Part III(B) – UNDERINSURED MOTORIST COVERAGE

## INSURING AGREEMENT[3]

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

1.      sustained by that **insured person**;
2.      caused by an accident; and
3.      arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**,

**We** will pay under this Part III(B) only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **underinsured motor vehicle** that arises out of a lawsuit brought within **our** written consent is not binding on **us**.

\*\*\*

## ADDITIONAL DEFINITIONS

When used in this Part III(B): . . .

2.      "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**.

An "underinsured motor vehicle" does not include any vehicle or equipment:
\*\*\*

h.  for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is equal to or greater than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**.

---

[3] The Insuring Agreement for UIM coverage is found within the "Auto Policy Coverage Endorsement."  (Doc. 28 at 26.)

\*\*\*

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Underinsured Motorist Coverage will be reduced by all sums:
1.　paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I-Liability to Others;
2.　paid or payable under Part II-Medical Payments Coverage;
3.　paid or payable because of **bodily injury** under any of the following or similar laws:
　　a. workers' compensation law; or
　　b. disability benefits law; and
4.　paid under Part III(A)-Uninsured Motorist Coverage for **bodily injury** arising out of the same accident.

The limit of liability shown, subject to all applicable reductions, will apply regardless of the number of:
1.　policies issued by **us**;
2.　claims made;
3.　**covered autos**;
4.　**insured persons**;
5.　lawsuits brought
6.　vehicles involved in the accident; or
7.　premiums paid.

If **your declarations page** shows a split limit:
1.　the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and
2.　subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.
These limits are subject to all applicable reductions to the limit of liability set forth above.

\*\*\*

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## OTHER UNDERINSURED MOTORIST COVERAGE

If any insurance **we** provide in accordance with the terms of this Part III (B) is applicable and any other underinsured motorist coverage from another insurer also applies, any insurance **we** provide will be excess over any other collectible underinsured motorist

coverage from another insurer. This means that **we** will pay only after all other collectible underinsured motorist coverage from other insurers has been exhausted by payment of judgments or settlements. If this policy and one or more policies from another insurer apply on an excess basis, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable underinsured motorist coverage limits from all applicable polices.

### Analysis

There is no genuine issue of material fact in dispute. Rather, the parties' dispute is whether the UIM provisions in the Policy are ambiguous, such that coverage is triggered. Additionally, in the event the Court finds that UIM coverage is triggered, the parties dispute whether the Policy is ambiguous as to the stacking of UIM coverage.

### A. UIM Coverage does not apply

Progressive argues that the Policy does not provide UIM coverage to the Mortons because the requirements of the Insuring Agreement are not met and coverage under the Policy is not triggered. Specifically, Progressive contends that the plain terms of the Insuring Agreement provide that, unless the tortfeasor's liability limits are less than the UIM coverage limit under the Progressive Policy, UIM coverage does not apply. In this case, Grainger had liability coverage with limits of $100,000 per person, which is the *same* as the Mortons' coverage limit under the Progressive Policy. Progressive argues that the Policy therefore, does not provide coverage for the Mortons' UIM claim. In support of this argument, Progressive cites the Missouri Supreme Court's opinion in *Rodriguez v. General Accident Insurance Co. of America*, 808 S.W.2d 379 (Mo. 1991), and the Eighth Circuit Court of Appeals' decision in *Owners Insurance Co. v. Hughes*, 712 F.3d 392 (8th Cir. 2013).

The Mortons argue that the Declarations page, and the Insuring Agreement, together with Other Insurance clauses either conflict with or contradict the definition of "underinsured motorist" creating an ambiguity when the Policy is read as a whole. The Mortons argue that

ambiguities arise from the following specific provisions in the Policy: (1) the Declarations Page's statement that the Policy provides UIM coverage with a $100,000 per person limit (in combination with the definition of 'Declarations Page'); (2) the Insuring Agreement and Progressive's promise that it "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury…'; (3) the Limits of Liability section's statement that the Declarations Page's $100,000 limit "is the most we will pay"; and (4) the Other Insurance clause that states "Our share is the proportion that our limit of liability bears to the total of all available coverage limits."

In *Rodriguez*, the Missouri Supreme Court addressed a nearly identical issue and insurance policy. The insured in *Rodriguez* was injured in an accident with a negligent tortfeasor whose insurance company paid Rodriguez $50,000, the limits of liability of his policy. 808 S.W.2d at 380. The insureds' damages exceeded $50,000, and they sought recovery under their own UIM policy. *Id.* The face sheet of their policy stated that the insureds had UIM coverage with a limit of $50,000, and the insuring agreement provided that the insurer would pay damages that the insured was entitled to recover from the owner of an "underinsured motor vehicle." *Id.* at 380-81. The policy defined "underinsured motor vehicle" as a vehicle whose "limit for bodily injury liability is less than the limit of liability for this coverage." *Id.* at 381. The insurer denied coverage on the ground that the tortfeasor was not an underinsured motor vehicle under the policy. *Id.* The *Rodriguez* plaintiffs argued that the term "underinsured motorist" was inherently ambiguous and that the effect of the plain language was to render the provision meaningless. *Id.* at 382. They claimed that they were entitled to a resolution of the ambiguity consistent with their "objective reasonable expectations." *Id.* at 381. Specifically, they argued that the court should interpret the underinsured motorist coverage as excess coverage and that they were

entitled to their policy limit, $50,000, in coverage beyond that which the tortfeasor's insurance previously paid. *Id.*

The Missouri Supreme Court rejected that argument, stating that the "objective reasonable expectations" doctrine does not apply unless the court first finds an ambiguity in the contract. *Id.* at 382. Analyzing the contractual language, the court stated, "[c]onsidering the clarity with which the underinsured motorist coverage is defined in the policy, we hold that it is neither ambiguous nor misleading." *Id.* at 383. The Court rejected the Eighth Circuit's opinion in *Weber v. American Family Mutual Insurance Co.*, 868 F.2d 286 (8th Cir. 1989), as "inconsistent with Missouri law." *Rodriguez*, 808 S.W.2d at 383. In *Weber*, the plaintiff argued that the insurer's interpretation of the policy would render underinsured motorist coverage meaningless because an insured would never reach the limits of liability under any scenario. *See id.* at 382-83 & n.1 (citing *Weber*, 868 F.2d at 288); Doc. 33, at pp. 12-14. The Eighth Circuit rejected the plain language of the insurance contract before it and held that the UIM coverage was excess above payments from other sources. *Rodriguez*, 808 S.W.2d at 382-83 & n.1 (citing *Weber*, 868 F.2d at 288). The Missouri Supreme Court stated that *Weber* was "an example of a court creating ambiguity to distort the language of an unambiguous policy." *Rodriguez*, 808 S.W.2d at 383.

In *Hughes*, the Eighth Circuit addressed similar arguments as the instant case and found that the holding in *Rodriguez* was controlling. 712 F.3d at 394. The Court held that the insured's UIM policy coverage did not apply because the tortfeasor's bodily injury limit of $50,000 was not "less than" the insured's $50,000 UIM limit as required by the policy's unambiguous definition of "underinsured automobile." *Id.* at 396. In reaching this decision, the Court relied on *Rodriguez*, which was described as "directly on point." *Id.* at 395. The Eighth

Circuit, however, recognized that decisions since *Rodriguez* make clear that even when a definition is clear and unambiguous that does not necessarily end the inquiry as to the existence of an ambiguity. *Id.* at 396. The Court stated, "if other policy provisions inject ambiguity into the meaning of what is a covered 'underinsured motor vehicle,' then *Rodriguez* would not compel a finding of no coverage." *Id.*

The Mortons argue that Missouri Supreme Court decisions following *Rodriguez* support their position that the UIM provisions of the Policy are ambiguous. The Mortons cite the following cases in support: *Seeck v. Geico General Insurance Co.*, 212 S.W.3d 129 (Mo. 2007); *Rice v. Shelter Mutual Ins. Co.*, 301 S.W.3d 43 (Mo. 2009); and *Ritchie v. Allied Property & Casualty Co.*, 307 S.W.2d 132 (Mo. banc 2009). The Mortons contend that these decisions reveal that the Missouri Supreme Court "now recognizes that a policy must be read as a whole for a determination of whether it is ambiguous." (Doc. 35 at 3.) In addition, the Mortons rely on the state appellate decision *Fanning v. Progressive Nw. Ins. Co.*, 412 S.W.3d 360 (Mo. Ct. App. 2013).

In *Seeck*, the Missouri Supreme Court analyzed an "excess insurance" provision. 212 S.W.3d at 132. The plaintiff in *Seeck* was injured as a passenger in a vehicle accident and sustained serious and permanent damages. *Id.* at 131. She did not own the vehicle. The plaintiff recovered $50,000 from the negligent driver's insurer. *Id.* She also sought recovery under the UIM coverage of her own policy, which had a limit of $50,000. *Id.* The insurer argued that no coverage existed because the tortfeasor's vehicle was not one whose "limit for bodily injury liability is less than the limit of liability for this coverage" and thus did not fall within the definition of underinsured motor vehicle. *Id.* at 132-33. The court, however, found an ambiguity based on the policy's "excess insurance clause." *Id.* at 132. That clause provided as follows:

When an insured is occupying a motor vehicle not owned by the insured . . . this insurance is excess over any other insurance available to the insured and the insurance which applies to the occupied motor vehicle is primary.

*Id.* The court stated:

Where there is an "excess" or "other insurance" clause that provides the underinsured coverage is excess over all other collectible insurance at the time of the accident, a court may find that language is ambiguous when read with the limit of liability or the definition of underinsured motorist coverage if the other insurance clause may reasonably be understood to provide coverage over and above that collected from the tortfeasor.

*Id.* at 133 (quoting *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673, 677-78 (Mo. Ct. App. 1996)). The court resolved the ambiguity in favor of coverage. *Id.* at 134. In this case, unlike the plaintiff in *Seeck*, Ms. Morton was driving her own insured vehicle. Thus, the policy language regarding the use of non-owned vehicles that was found ambiguous in *Seeck* is not applicable in the instant case.

In *Ritchie*, it was undisputed that the definition of "underinsured motor vehicle" was satisfied, as the liability limits of the tortfeasor's insurance policies were less than the limits of the UIM coverage provided in the policy at issue. 307 S.W.3d at 134. The court held that the policy's anti-stacking provisions did not apply in the special situation where the insured is injured while occupying a non-owned vehicle. *Id.* at 137-38. *Ritchie* has no application in the instant case, where Progressive contends that there is no UIM coverage because the definition of "underinsured motor vehicle" is not satisfied.

The Missouri Supreme Court analyzed an uninsured motorist ("UM") policy in *Rice*. 301 S.W. 3d at 46. The court held that the policy was ambiguous when an exclusionary clause limited coverage to the statutory minimum, but another policy provision granted more coverage. *Id.* at 48. The court found the provisions were "entirely inconsistent and cannot be reconciled."

*Id.*  *Rice* has little application in the instant case, which involves UIM coverage not UM as in *Rice*, and no such inconsistent provisions.

It is true that Missouri courts have found UIM provisions to be ambiguous following *Rodriguez*.  Those cases, however, involved circumstances not present in the instant case.  Unlike the insured in *Seeck*, Ms. Morton was driving her own insured vehicle.  The liability limits of the tortfeasor's insurance policies in *Ritchie* were less than the limits of the UIM coverage provided in the policy at issue.  *Rice* involved interpretation of a UM policy.  Thus, the recent Missouri Supreme Court cases upon which the Mortons rely are all factually distinguishable from the instant case.

The Mortons also rely heavily on *Fanning* to support their position that the instant Policy is ambiguous.  In *Fanning*, the Court of Appeals for the Western District of Missouri analyzed an UIM policy similar to the Progressive policy in this case and found it was ambiguous.  412 S.W.3d at 365.  First, the court held that the policy was "ambiguous as a result of a conflict between the policy definition of 'underinsured motor vehicle,' the policy definition of 'declarations page,' and the language that actually appears on the declarations page."  *Id.*  The court noted that, pursuant to the policy's definition of "declarations page," the declarations page must include "coverages" and "limits of liability."  *Id.*  Because the declarations page indicated no limitation other than the monetary figure of $50,000/$100,000 for UIM coverage, the court held that this rendered the policy ambiguous.  *Id.*  Second, the court held that the policy's set-off provision created an ambiguity because, under the set-off provision, the insurer would never have to pay up to its policy limit.  *Id.* at 367-69.  The set-off provision in *Fanning* allowed for the limit of liability stated in the declarations to be reduced by all sums paid by the tortfeasor.  *Id.* at 367.  The Mortons raise the same arguments that were accepted in *Fanning*, and further

contend that the fact that Progressive made changes to the Policy subsequent to the *Fanning* decision lends support to their claim that the Policy was ambiguous.

This Court,[4] in *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp.3d 943, 947 (E.D. Mo. 2014), declined to follow the reasoning in *Fanning*. The Court found that binding Missouri Supreme Court precedent "expressly prohibits a court from finding an ambiguity solely by giving effect to the insured's reasonable expectation." 11 F. Supp.3d at 957 (citing *Rodriguez*, 808 S.W.2d at 381-83). The Court held that the tortfeasor with which the insured collided was not an underinsured motor vehicle under a policy almost identical to the instant Progressive Policy where the vehicle's liability policy limit was the same as the insured's UIM coverage. *Id.* at 959.

The Court will examine the specific provisions of the Policy the Mortons claim are ambiguous with the above legal background in mind. As will be discussed in detail below, the Court finds that the Mortons' reliance on *Fanning* is unavailing because *Fanning* conflicts with binding precedent by the Missouri Supreme Court, which this Court is compelled to follow.

### 1. *Declarations Page and the Definition of 'Declarations Page'*

The Mortons claim that the Declarations Page's statement that the Policy provides UIM coverage with a $100,000 per person limit (in combination with the definition of "Declarations page") creates an ambiguity within the policy. Specifically, the Mortons note that "declarations page" is defined as: "the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary." The Mortons argue that, because there is no reference to the term "underinsured motorist" in the Declarations Page except to state that there

---

[4]The Honorable Shirley Padmore Mensah, United States Magistrate Judge.

is $100,000 of coverage, the Policy is ambiguous and the Mortons had a reasonable expectation that the UIM coverage was for uncompensated damages.

The state appellate court in *Fanning*, reasoned that the declarations page permitted the insured "to form the reasonable belief" that the insured had obtained UIM coverage with a maximum of $50,000 per person, and that the definition of underinsured motor vehicle acted to "nullify" or "limit" that coverage, creating an ambiguity. *Id.* at 366. The *Fanning* court also emphasized that the declarations page contained "no alert" that the tortfeasor's liability insurance had to be less than the amount shown on the declarations page for the coverage to be triggered. *Id.* The *Fanning* court suggested that in order to avoid being ambiguous, the policy would need to state on the declarations page the "manner in which the[] maximum limits [reflected on the declarations page] could be reduced" or "nullified." *Id.*

As this Court pointed out in *Jaudes,* the *Fanning* court cited no Missouri Supreme Court opinions in support of this position. 11 F. Supp.3d at 956. The Missouri Supreme Court has recognized that "essential terms are usually stated in ***abbreviated form*** on a declarations page." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007) (emphasis added).

The Court finds that the Declarations Page and the definition of the term "**Declarations page**" in the instant Policy are not ambiguous. The heading of the Declarations Page provides, in large, bold face type, "**Auto Insurance Coverage Summary**." Under this heading, it states "Your insurance policy and any policy endorsements contain a full explanation of your coverage." The Declarations page explains, in bold face type, under the section "**Outline of coverage**" that the limits listed "**are subject to all terms, conditions, exclusions and applicable reductions described in the policy.**" It is clear from the Declarations Page and definition of such, that the Declarations Page is merely a summary of the insured's benefits. An

ordinary person of average understanding would not be led to to believe that the Declarations Page in the Policy contains anything more than an "abbreviated form" of the policy's "essential terms." *Id.* In addition, the definition of the term "**Declarations page**" is consistent with the Declarations Page attached to the Policy. The definition of "**Declarations page**" indicates that it shows coverages and limits of liability, but also that the information provided is an "Auto Insurance Coverage *Summary*." (Emphasis added.)

Contrary to the Mortons' argument, neither the Declarations Page nor the definition of the term "**Declarations page**" contains any language that would lead an ordinary person of average understanding to believe that the limit of liability of $100,000 per person was a promise of coverage over and above any amount paid by a third party tortfeasor "for all uncompensated damages." (Doc. 23 at 5.) Rather, after reading the clear notification in the Declarations page that the limits were "**subject to all terms, conditions, exclusions, and applicable reductions described in the policy**," an ordinary person would read the remainder of the Policy to determine the full scope of benefits. There is "nothing ambiguous or misleading about a policy that offers underinsured motorist coverage in a certain amount on its face sheet and then defines 'underinsured motor vehicle' as it is defined here." *Jaudes*, 11 F. Supp.3d at 957 (citing *Rodriguez*, 808 S.W.2d at 381-8; *Hughes*, 712 F.3d at 394-96). *Rodriguez* expressly prohibits a court from finding an ambiguity solely by giving effect to the insured's reasonable expectation. 808 S.W.2d at 381-83. In the absence of any misleading or confusing language contained in the policy itself, this Court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists." *Todd*, 223 S.W.2d at 163.

## 2. The Insuring Agreement

The Mortons claim that the general Insuring Agreement, together with Progressive's promise in the Insuring Agreement of the UIM portion of the Policy that it "will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**…" creates an ambiguity. The Mortons' claim lacks merit.

The language of the general Insuring Agreement (Doc. 28-1 at 6) clearly informs the insured that the insurance provided is subject to all terms, conditions, and limitations of the Policy. It further sets out that the Policy consists not just of the Declarations page, but also the Policy contract, insurance application, and all endorsements to the Policy.

The Insuring Agreement with respect to UIM coverage (Doc. 28-1 at 26) provides as follows:

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:
1. sustained by that **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**,

**We** will pay under this Part III(B) only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **underinsured motor vehicle** that arises out of a lawsuit brought within **our** written consent is not binding on **us**.

Immediately following the UIM Insuring Agreement, the Policy sets forth "Additional Definitions." "**Underinsured motor vehicle**" is defined in that section as "a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability

bonds or policies applicable at the time of the accident <u>is less than the coverage limit for</u> <u>Underinsured Motorist Coverage shown on the</u> **declarations page**." (Underline added for emphasis.)

The Mortons argue that the absence of limiting language in the portion of the UIM Insuring Agreement providing that Progressive "will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**…" creates an ambiguity. The court in *Fanning* held that "the Insuring Agreement and Limit of Liability portions of the policy . . . render the definition ambiguous by failing to include limiting language regarding the coverage." The *Fanning* court did not, however, analyze any of the language of the Insuring Agreement or explain how it created an ambiguity.

In this case, the UIM Insuring Agreement limits coverage to situations where the insured is legally entitled to recover from the owner or operator of an "**underinsured motor vehicle**." The term "underinsured motor vehicle" is then defined as a vehicle for which the sum of the limits of liability is less than the coverage limit for UIM coverage shown on the Declarations page. The Policy definition further provides that an "**underinsured motor vehicle**" does not include any vehicle "for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is equal to or greater than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**."

In support of their argument that the Policy is ambiguous, the Mortons focus on isolated language in the Insuring Agreement of the UIM section, but ignore the complete section and definitions contained therein. The Court, however, must not interpret policy provisions in isolation. *Ritchie*, 307 S.W.3d at 135. Rather, the Policy must be read as a whole in a manner

that does not render some provisions useless.  *See Dibben*, 261 S.W.3d at 556.  When the general Insuring Agreement is read together with the entire UIM Insuring Agreement, along with the applicable definitions, there are no ambiguities.  Nothing in the Policy supports the Mortons' argument that the Policy promises to pay the full $100,000 UIM limit of liability without any special conditions, exclusions, or reductions.  To the contrary, the definition of "underinsured motor vehicle" is explicit--it does not include vehicles with liability limits *equal to or greater than* the insured's UIM limit of liability.

This Court, in *Jaudes*, found that the *Fanning* court's "conclusory finding that the Insuring Agreement renders the definition of underinsured motor vehicle ambiguous is inconsistent with the Missouri Supreme Court's decision in *Rodriguez* and with the plain language of Progressive's policy."  The undersigned finds that the reasoning in *Jaudes* is persuasive and applies in this case.  *Rodriguez* upheld an insurance agreement with a definition of "underinsured motor vehicle" that was almost identical to the language in the instant case.  808 S.W.2d at 381.  *See also Hughes*, 712 F.3d 392; *Jaudes*, 11 F. Supp.3d at 957-58.  Because there is no ambiguity in the Insuring Agreement, this Court will not defer to the state court of appeals decision in *Fanning*.

### 3. *The Limits of Liability Section's "Most We Will Pay" Language*

The Mortons next argue that the Limit of Liability language (Doc. 28-1 at 27) regarding "the most we will pay for all damages due to **bodily injury** to one person" with reference to the Declarations Page's $100,000 limit creates an ambiguity.

The Mortons' claim lacks merit.  The Limit of Liability (Doc. 28-1 at 27) begins by stating:  "The limit of liability shown on the **declarations page** for Underinsured Motorist Coverage will be reduced by all sums:  1. paid because of **bodily injury** by or on behalf of any

persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I-Liability to Others…"  As such, it is clear that the $100,000 limit set out on the Declarations Page is subject to potential reductions.  In addition, immediately following the language quoted by the Mortons, the Policy provides:  "These limits are subject to all applicable reductions to the limit of liability set forth above."  Although the Mortons urge in their Motion for Summary Judgment that the Court should read the Policy as a whole to determine whether it is ambiguous rather than relying solely on the definition of "underinsured vehicle," the Mortons' arguments rely on reading isolated policy provisions out of context.  When the Limit of Liability provision is read in its entirety, it is unambiguous.

The Mortons' argument is also in conflict with the Missouri Supreme Court's decision in *Rodriguez.*  The relevant policy language in *Rodriguez* was substantially identical to the policy language in *Fanning.*  The policy in *Rodriguez* provided,

> [t]he limit of liability shown in the schedule for this coverage is our maximum liability . . . This is the most we will pay . . .  However, the limit of liability shall be reduced by all sums paid [on behalf of the tortfeasor]."

*Id.* at 381.  The *Rodriguez* court, nevertheless, enforced the definition of "underinsured motor vehicle" and expressly rejected the plaintiffs' argument that a definition of "underinsured motor vehicle" like the one here could not be given effect because, if it were, the promised $100,000 limit of liability would never be available to the insured.  *Id.* at 382-83.  *See also Hughes*, 712 F.3d at 394-95 (citing *Rodriguez*, 808 S.W.2d 379); *Jaudes*, 11 F. Supp.3d at 958-59.

Similarly, in *Hughes*, the Eighth Circuit rejected the insured's argument that an ambiguity was created because enforcement of a policy definition of underinsured automobile like the one here would mean that the promised $100,000 limit of liability would never be available to the insured.  *See* 712 F.3d at 394-92 (citing *Rodriguez*, 808 S.W.2d 379).  The

*Hughes* court noted, "[i]n other words, because the unambiguous definition of 'underinsured motor vehicle' was not satisfied, the coverage did not apply regardless of potential ambiguities in the description of the amount of underinsured coverage." *Id*. at 395.

Although Mr. Morton's perception was that he had purchased excess coverage of $100,000 under the UIM provision, the only way for the Mortons to receive an additional $100,000 for bodily injury in this instance would be if their coverage had been greater than $100,000. For instance, if there had been $200,000 in coverage, the Mortons could have sought up to $100,000 for Ms. Morton's injuries.

### 4.     *Other Insurance Clause*

The Mortons contend that the Other Insurance clause that states "[o]ur share is the proportion that our limit of liability bears to the total of all available coverage limits" creates an ambiguity.

The language relied upon by the Mortons has been superseded and amended by the Policy's endorsement.   The Auto Policy Coverage Endorsement referenced in the Policy's Declaration page provides:

The **OTHER INSURANCE** provision is deleted and replaced by the following:

**OTHER UNDERINSURED MOTORIST COVERAGE**

If any insurance **we** provide in accordance with the terms of this Part III (B) is applicable and any other underinsured motorist coverage from another insurer also applies, any insurance **we** provide will be excess over any other collectible underinsured motorist coverage from another insurer.  This means that **we** will pay only after all other collectible underinsured motorist coverage from other insurers has been exhausted by payment of judgments or settlements.  If this policy and one or more policies from another insurer apply on an excess basis, **we** will pay only **our** share of the damages.  **Our** share is the proportion that **our** limit of liability bears to the total of all applicable underinsured motorist coverage limits from all applicable polices.

(Doc. 28-1 at 28.)  The governing language cited above is not triggered in this case because there is no "other underinsured motorist coverage from another insurer" at issue. The Mortons cannot demonstrate the Policy is ambiguous due to either isolated superseded language or governing Policy language that is not even applicable in the instant case.

The Mortons have failed to show any ambiguities in the Policy.  The clear and unambiguous definition of "underinsured motor vehicle" in the Policy is not satisfied because the limit of liability of Grainger's policy is not less than the coverage limit for UIM coverage of the Mortons' Policy.

Here, as in *Rodriguez* and *Hughes*, Progressive is not attempting to rely on a setoff provision; rather, Progressive contends there is no underinsured motorist coverage because the definition of "underinsured motor vehicle" is not satisfied.  In sum, the undersigned finds that the clear and unambiguous definition of "underinsured motor vehicle" in Progressive's policy is not satisfied and that none of the policy provisions cited by the Mortons create ambiguity regarding that definition.  Thus, the Mortons are not entitled to coverage under the underinsured motorist provisions of the policy.

### 5. *Progressive's Subsequent Changes to the Policy*

The Mortons rely heavily on the fact that Progressive made changes to policy language at issue in this case in a policy that was subsequently issued to them.  The Mortons contend that Progressive made these changes in response to the *Fanning* decision, and that the changes constitute proof of the ambiguities in the Policy at issue.

The fact that Progressive made changes to a separate policy issued after the accident giving rise to this case is irrelevant in the instant action.  If a contract is unambiguous, the intention of the parties and the legal import of the language of the contract cannot be varied by

parol or extrinsic evidence. *Allison v. Flexway Trucking, Inc*., 28 F.3d 64, 67 (8th Cir. 1994) (applying Missouri law). The Court has found that the Policy is unambiguous and that the definition of "underinsured motor vehicle" is not satisfied. Any subsequent changes Progressive made to its policy language have no effect on this determination.

**B.     Stacking**

Progressive argues that, if UIM coverage is triggered by the Mortons' claim, stacking of the UIM coverage on the separate vehicles listed on the Policy is not permitted. The Court has determined that UIM coverage is not triggered in this case. Thus, the issue of stacking will not be addressed.

**II.     Commercial Policy**

Progressive also seeks summary judgment declaring that the Commercial Policy does not provide UIM coverage to the Mortons for Ms. Morton's injuries arising out of the December 2013 automobile accident. Progressive contends that the Commercial Policy does not provide UIM coverage for the following reasons: (1) coverage is not triggered because Grainger was not driving an "underinsured auto" as the limit of liability for Grainger's liability policy is not less than the coverage limit for UIM coverage in the Mortons' Commercial Policy; and (2) coverage is excluded because the 1994 Ford Probe does not constitute an "insured auto" or "temporary substitute auto" under the terms of the Commercial Policy. Progressive further argues that, if the Court determines that UIM coverage is triggered, the Commercial Policy does not permit stacking of UIM coverage.

In their Response to Plaintiff's Statement of Uncontroverted Material Facts, the Mortons state that they have "withdrawn any claim made under the Commercial Auto Policy." (Doc. 34 at 1-2.)

The Court agrees that the Commercial Policy is not triggered because Grainger's vehicle was not an "underinsured auto" under the definition of the Commercial Policy, for the same reasons discussed with regard to the personal Policy. Because the Mortons have withdrawn any claim under the Commercial Policy, the Court will not discuss Progressive's other arguments. Summary Judgment will be entered in favor of Progressive declaring that the Commercial Policy does not provide UIM coverage.

## III.     The Mortons' Motions

The Mortons filed the following motions after the cross motions for summary judgment were fully briefed: (1) Motion for Oral Argument and Testimony Regarding Plaintiff's Motion for Summary Judgment (Doc. 39); and (2) Defendants' Request for Leave to File First Request for Production Directed to Plaintiff (Doc. 43). The undersigned will discuss the pending motions in turn.

## 1.     Motion for Oral Argument and Testimony

The Mortons request that the Court hear oral argument and testimony in conjunction with Progressive's Motion for Summary Judgment because the Memorandums of the parties "present complex issues of law that require additional clarification." In addition, the Mortons contend that the case involves the "reasonable expectation" doctrine, and as such requires the testimony of Delton Morton concerning the facts and circumstances surrounding the purchase of the policy in question and its renewal. Progressive opposes the Mortons' motion, arguing that oral argument is unnecessary and that presenting the testimony of Mr. Morton is inappropriate in the context of a pending motion for summary judgment.

The Mortons' Motion for Oral Argument and Testimony will be denied. The issues have been extensively briefed and oral argument would not assist the Court. Furthermore, the

Mortons' request to present the testimony of Mr. Morton is rendered moot by the Court's determination that the Progressive Policy is unambiguous.

**2.      Request for Leave to File First Request for Production**

The Mortons request leave to file a First Request for Production of Documents directed to Progressive relating to the claim file for the following reasons:  (1) Progressive took over three months to deny UIM coverage when it knew from the onset that the tortfeasor had the same limits of liability as the Mortons; and (2) the Mortons request that Progressive produce the file before the Court rules on the motions for summary judgment to determine the "reasoning and internal communication by the claims personnel in denying the claim and discussion of any ambiguities contained in the policy that are contrary to the position now taken by the Plaintiff."

Progressive opposes the Mortons' request, arguing that the request is untimely, the requested documents would be irrelevant, the request is overly broad, and the request seeks information protected by the attorney client and work product privileges.

The Mortons' request will be denied.  The Initial Case Management Order issued in this matter provided that any dispositive motions be filed no later than April 15, 2015.  The Mortons did not file the instant motion for discovery until June 2, 2015, after the cross motions were fully briefed.  As such, the request is untimely.

In addition, the requested documents are irrelevant to the issues presented in the cross motions for summary judgment.  As previously noted, if a contract is unambiguous, the intention of the parties and the legal import of the language of the contract cannot be varied by parol or extrinsic evidence.  *Allison*, 28 F.3d at 67.  The Court has found that the Policy is unambiguous and that UIM coverage is not triggered.  Thus, any internal communication that may exist is immaterial to the determination that coverage does not exist under the language of the Policy.

## CONCLUSION

For all of the reasons stated above, Progressive has established that it is entitled to judgment as a matter of law. The undisputed facts and controlling Missouri law establish that the Mortons are not entitled to underinsured motorist coverage under Progressive's Personal Auto Policy with respect to Ms. Morton's accident with Ms. Grainger, because (i) the Policy is unambiguous; and (ii) Grainger's vehicle does not qualify as an "underinsured motor vehicle" under the terms of the Policy. For these same reasons, the Mortons are not entitled to underinsured motorist coverage under Progressive's Commercial Auto Policy. The Court will issue a separate judgment consistent with this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 26) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Partial Motion for Summary Judgment (Doc. 21) is **DENIED**.

**IT IS FINALLY ORDERED** that Defendants pending motions (Docs. 39, 43) are **DENIED.**

The Court will issue a separate judgment consistent with this Memorandum and Order.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of October, 2015.